We'll hear argument next in Dunningan v. Cook under the caption Peterson v. Islamic Republic of Iran 162395. Good morning, Your Honors. May it please the Court, Max Falkenflik, Falkenflik and McGarrity for moving its appellants. David J. Cook appeals from the denial of his June 1, 2016, motion to intervene as a matter of right. The district court action below was a proceeding to enforce a September 2007 $2.65 billion default judgment against the Islamic Republic of Iran and in favor of the Peterson plaintiffs. Mr. Cook was engaged to identify assets to satisfy that judgment and to assist in the recovery of those assets, and nearly $2 billion was recovered. He filed his motion to intervene on June 1, 2016, because a proposed distribution order, which the court was about to issue, allowed a trustee of a trust, which was holding the recovered funds, to distribute those funds without protecting Cook's contractual and legal priority. Picture, he had been let go for cause, and he was out of the picture many years before this. And my question is why he expected anybody to look out for his interests early on after he had been removed for cause? And therefore, why he didn't try to protect his claim when the summary judgment was granted? Well, there are several reasons. First of all, Your Honor, respectfully, we don't believe Cook was charged for cause, and that's a matter subject to arbitration. But there was, I didn't think he had too many friends at that point in the legal community who were arguing the sides of the plaintiffs here. And the fact of whether they were friends or not, or whether they would look out ultimately for his interest or not, is not the issue under Rule 24 for intervention. For example, in the Butler Fitzgerald case, which I think- Don't you have to argue, though, that his lien, don't you have to argue that somehow he believed that he was going to be protected until the distribution order? I believe not, Your Honor, respectfully. And the reason I believe that's not true is that under Rule 24A2, a party who intervenes is a party in all respects in the action. Now, Cook did not have to become a party to the action in order to proceed with his claims or to protect his lien at that time. The funds from early on, from 2011, before he was terminated, the funds were all in custodial legis. They were under control of the court up to and until June 6, 2016. So those funds were protected. And he did not need to take any further action to protect those funds because no distribution could occur until further order of the court. I'm puzzled about that. At the time that he is discharged, I understand you have an argument that the discharge was not properly for cause. Are you arguing that it was not even said to be for cause? No, they said it was for cause, but the cause on its face was pretextual. Well, fine, and maybe it was. But my understanding of the attorney's charging lien is that, and maybe it's a mistaken understanding, so you'll correct me if I'm wrong, but my understanding is that it attaches upon discharge if the discharge is not for cause, and it doesn't attach if it is for cause. So why isn't it incumbent on a lawyer who is fired from a case, who knows that the client believes it's for cause, asserts that it's for cause, why isn't it incumbent on the lawyer at that point to assert the lien and then do whatever needs to be done in the litigation or elsewhere to adjudicate whether the lien attaches or not? And if the answer is going to include that when that happened, and nobody actually thought this was ever going to lead to real money, why isn't that true in every case where a lawyer is retained on a contingency or something, is discharged early in the proceedings, and no one knows at that point whether there's going to be a judgment or not. Okay, there are two reasons. Let me address the first part of your Honor's question first. It's clear under New York law that you don't have to do that, you don't have to proceed in that way. Not merely under the expressed terms of the section 475 lien, but also under the case of Cone v. Granger, which I discuss at length in my reply brief. So the Cone v. Granger case says that the attorney can ask the court to determine his lien at any time. And need not do it at the moment of discharge. And there's some discussion as to whether or not the attorney's acts have to express some interest in receiving a contingency rather than a quantum merit recovery, which actually could include consideration of contingency. But that really doesn't apply to Cook, because his entitlement to the fee, as opposed to his entitlement to a section 475 lien, is determined by District of Columbia law. So the Cone case is a complete answer to your Honor's first question. He doesn't need to do it at that time. And in fact, his interest under Rule 24A, one of the things he has to prove is that his interests are not being adequately protected. Now his interests were being adequately protected by my friend Mr. Bonner. I don't think he'll disagree with that. By Theodore Olsen, who argued in the United States Supreme Court. What happened after he was discharged was an ongoing litigation. Now in the Butler Fitzgerald case I started to mention, which I didn't highlight sufficiently in my brief. Judge Cartman's opinion for this court made clear that the question of whether discharge of an attorney in a charging lien by itself gives right to intervene under Rule 24 is unsettled in this circuit. And here, if you look at the Red Ball case, you want to look when the threat to his interest first occurs. And in order to satisfy the balancing test of Rule 24, which is to allow for efficient litigation and not inefficient intrusion into litigation. In order to allow that balancing test to occur, you wait until the interest is truly threatened. Now it was not truly threatened until June, until the end of May 2016 when the proposed distribution order came out. And even if you go backwards to the, if I may finish this answer, Your Honor? Even if you go backwards to the moment when the QSF order was entered. The QSF order was entered in June of 2013, I believe it was. But that order did not, to the extent that you could read that order to pose a threat, and I think that's an inappropriate over reading of that order because the funds were still protected by the court. If you, the notices of appeal in the case for summary judgment were filed in less than 30 days following the issuance of that order. So upon that filing of the notices of appeal, the district court would not continue to exercise jurisdiction over any motion to intervene. So the delay is really 30 days. And I understand the footnote in the Levin case, which Your Honor sat on the panel, that issued that it may not be jurisdictional as a matter, but it is a matter of the court's precedent and jurisprudence that the district court will not act. And in fact, Judge Forrest had in other cases made clear that she, in Levin itself, that she felt she had no jurisdiction to entertain motions to intervene after the appeals were filed. So that carves out everything from August of 2011 until May 24, I believe it was, or May 20, when this court issued its mandate in the case. And within days of the issuance of this court's mandate, the proposed distribution order was presented to the court. We recognized the threat to Cook's interest and we filed immediately. And that is an unusual circumstance in this case, militating against the finding of untimeliness. And I think it's also supported by Judge Loewe's opinion in LaRoe, which I understand. We'll see what happens. Well, I was at the argument there, Your Honor, and I think if anything, the court will avoid the constitutional question and find actual standing. Justice Kennedy made that pretty clear. That was his opinion. Could I ask, what, if anything, is the effect of the District of Columbia Court's quashing of the DC lien here? Yes, I think that's an excellent question and the answer is nothing. And the reason it's nothing is because Cook's lien under DC law arises out of an express indication in the retention agreement that he's to be paid out of the recovery of against the judgment and the district court's opinion is under appeal in the DC circuit. And we think there was such an express intention in the contract. But even if there weren't, the issue in New York is statutory. Under section 475, it's a protection for any attorney funds where there is a recovery of assets in New York. And that protection, that statutory right to have a lien does not depend on the agreement of the client. There need be no reference by the client to a recovery from the judgment. So the rights being asserted here are purely a New York lien, has nothing to do with the DC lien? It has nothing to do with the DC lien, although we do believe that Judge Forrest, and we had indicated in our appellate brief, that Judge Forrest should have taken that into consideration because that lien was then in effect. And what is the status of the arbitration at this point? It's scheduled for a hearing commencing on November 28th. The parties, the attorney defendants had resisted in every way possible from moving that case forward, but we finally got a trial date. The case against the Peterson plaintiffs was severed and stayed, and probably will be stayed until the District of Columbia rules. We do not have an argument date in the District of Columbia, but we've been told it would be in the fall. Precisely is the issue before the arbitrator. The whether or not Cook is entitled to $200 million. Because, in fact, what happened, Your Honor, is Cook, it's indisputable from documents on the record in the District of Columbia and here in the Southern District of New York, that Cook was the one who located the assets that were the subject of the proceeding here in New York. That Cook then immediately proceeded with enforcement proceedings in New York by registering the judgment under Rule 69 and 28 USC, I believe it's 1263. He then, and restrained those assets, kept those restraints in place, proceeded with years of litigation- Discharge of the clause is also an issue there, isn't it? Absolutely. And you mentioned an arbitration against the Peterson plaintiffs. One of the things, as a practical matter, that interests me, the money that Mr. Cook is asserting a claim to, is that in addition to any fees that would be taken out of this total award by other attorneys? Or is it a dispute among the lawyers about how to carve up some total amount of attorney's fees that are already excluded? Put another way, is the lien that you are requesting going to further delay the distribution of funds to the plaintiffs in the case? Well, Your Honor, I have two answers to that. As to the first part of Your Honor's question, that doesn't depend on us, it depends on the attorneys. As to whether the other attorneys, whether they assert that Cook's fee is a cost, which they are entitled to recover from the plaintiffs, it appears from the reports of the QSF trustee, which had been submitted in the most current one is the third supplemental appendix. That was a report he issued to the court in late April. That the attorneys are not asserting that is a cost, so it would come out of the attorney's share, collective share, but I'm not certain. In my family, the proposition that lawyers are entitled to be compensated for the work that they do has generally been met with favor. But at the same time, lawyers have a fiduciary obligation to clients, and the clients in this case were injured many years ago. I would wonder whether there is some possibility for arriving at some kind of settlement, may not be the right term because I'm not suggesting something that would finally adjudicate all of this or resolve all these disputes. But that there would be some way of the various lawyers involved agreeing on some resolution that whatever happens here is not going to compromise the interest of the ultimate plaintiffs. And that what we're talking about is a fight among lawyers about who did what work and who's going to get some amounts out of the attorney's fees portion of the seized assets. At least that would make me a lot more comfortable thinking about what the effect of this lien would be. Well, Your Honor, I have two answers to that question. First, we agree with you wholeheartedly, and although it is not in the record, after the DC Circuit came down and said it's not a claim against the plaintiffs, it's a claim against the attorneys. We immediately moved before Justice Crane in arbitration and said, we're willing to accept that judgment and withdraw our appeal if the attorneys are willing to agree to abide by that order. In other words, we proffered exactly the solution Your Honor proposed, and the attorneys refused to do that. So we're concerned that they're going to try and play rope-a-dope with us. And in the proceeding in the district court say it's only with the attorneys, which they actually said in papers they made such a representation. And then in the arbitration they'll say no, it's only against the plaintiffs, you have to chase 1,400 people. So what we want to do, right now there's $700 million that continues to be with the QSF trustee. And that 700 million, most of that, or a good portion of that belongs to the attorneys, and some portion belongs to the plaintiffs, about 200 million. We don't have to figure out where the 200 million is coming from as long as a lien attaches to those funds. There is also the 650 Fifth Avenue litigation, which Your Honors may be aware of, and Kirshenbaum case sent that back for trial. The plaintiffs in this case, I understand, could receive as much as 60% or so of the recovery in that case, which is expected to be between $1 billion and $1.5 billion. I think it's also relevant to Your Honor, and perhaps Your Honor's family as well, that the plaintiffs would not be getting any of the nearly $2 billion. Not a penny, we believe, if it was not for the actions of Cook. That may or may not be so. Certainly if it were not for all the efforts of all the lawyers collectively, nobody would get anything because the lawyers were, brought the case and did the work. What each individual lawyer contributed to that, I don't think we need to worry about at this moment. Well, Your Honor, I'm not saying, I'm not trying to denigrate the fine work done by Mr. Bonner and his colleagues. I'm just saying that as of September 2007, $10 billion of judgments had been entered against Iran for terrorist activities, $10 million, 1 20th of the amount that Cook found had been recovered. So it is a significant contribution, and truly, if there should be some- That's for the arbitration. That's for the arbitration. Thank you very much. Thank you, Your Honor. Mr. Bonner. Thank you, Your Honors. My name is Jim Bonner. May it please the court. It's my great honor to stand before you as a representative of the Marines and the Marine family members who are the appellees in this case. As you just heard, Mr. Cook is demanding a $190 million charging lien. Indeed, today, he raised that to $200 million charging lien. That includes 10% of all the funds that were recovered by all of the claimants in this case, including hundreds and hundreds of people that Mr. Cook never represented. We're not going to adjudicate that. I mean, all we're doing is, it wouldn't matter if it was 10 million or 200 million or 20,000, we're just looking at whether he should have been allowed to intervene. And the reason why that's relevant, Your Honor, is that it relates to some of the prejudice that arises from Mr. Cook sitting on his hands and waiting for five years after his termination. Well, why is there prejudice to anyone other than, and I guess this is not a small matter or an irrelevant matter, other than the lawyers? What it would be the problem with having some kind of standstill agreement that allows all of the funds to be distributed to the plaintiffs, that the plaintiffs are entitled to, and let the lawyers agree to fight out in the arbitration. Who's entitled to what of some collective amount of attorney's fees? And if that were done, presumably the arbitration can proceed promptly. And if Mr. Cook is entitled to nothing, we'll find that out. And if he's entitled to a lot of money, we'll find that out. And we won't be holding the people that you started by saying, you're honored to represent, hostage to a fight among lawyers about fees. I think, Your Honor, that the prejudice really arises here, not only to the lawyers, but to the clients. Because it's unsure, based upon what Mr. Folkenflik had to say today, whether he objects to the distribution being made to the clients. That's an enormous problem. And the attorney's lien, of course, attaches to the client's recovery. And so there's a grave danger here. Well, that's if we have to adjudicate that. And if we wind up saying that he's entitled to intervene to assert this lien, I'm asking why the lawyers can't get together and work out something. If it is the case, and maybe it isn't, but if it is the case, that this is not a cost, but is part of the total attorney's fees. And anything that he gets, somewhere between zero and $200 million, will come out of the total award of attorney's fees. Why can't the attorney's distribution be agreed to be held up? No lien is asserted. The money goes to the plaintiffs. And you guys fight in the arbitration. And if you're right, you win. And he gets nothing, and everybody's happy except him. Or if he wins, that's because the arbitrators decided he was entitled to win. Is there a problem with that? I think there are a number of problems with that, Your Honor. Number one is, as the court has recognized, people fought in this case for 15 years in order to get a recovery. People have gone into a great deal of debt attorneys in order to pay for the litigation that was fought for that length of time. People want to get their fees. And the reason why Mr. Cook can't hold up all of this payment, not only to the parties, but also to the attorneys, is that he sat on his hands for five years after his termination. The second part of the- What happens if he wins, if there's no lien, and what happens if he wins the arbitration? The arbitrators say he's entitled to $200 million. Who is he going to come after? He's going to come after Messrs. Fay and Perlis, who are the lawyers with which he has an agreement. And there's been no demonstration, no claim, no contention that there's any reason why Messrs. Fay and Perlis can't pay whatever fees are awarded to Mr. Cook in that arbitration. An attorney's lien is a different- One of two things is, if that statement is true, that they can pay, that means one of two things. It either means that they are very rich people, or it means that if they get this award of fees, they're going to have to be setting some of it aside against the contingency that they lose the arbitration, right? That's correct, Your Honor. And listen, if we were talking about a reasonable amount of money here, I think that people would, at some point, agree to put a reasonable amount of money aside. But what we have here is this demand for $200 million to be set aside, when the case law is absolutely positively clear that Mr. Cook, under no set of circumstances, is ever going to be paid $200 million. He was discharged five years before this litigation ended. The case law says that the most that he could possibly attain as a fee in this case is the amount of money that is his proportionate share of all of the work that was done by all of the attorneys in the case. Now, if we start going down that- As I have understood this, the amount of money is the main obstacle to a resolution of the dispute among the attorneys, is that right? That's certainly the case, Your Honor. But I- I have to go back. Yes. One more issue about prejudice, Your Honor, which I think is very important, which I haven't articulated well to this point, is that in the interim between the time that Mr. Cook was discharged and the time that this money was recovered, there was a settlement entered into by not only the marine clients, but there were, you can see in Judge Forrest's opinion in the Peterson case, which is granting a summary judgment, there were 20 groups of different plaintiffs, only one of which did Mr. Cook ever represent. And he's claiming this lien on all of the recoveries of all of those people. Now, some of that money's been distributed to those folks already, so we're going to have a grave, grave problem on our hands. If Mr. Cook gets a $200 million attorney's lien, trying to figure out who is going to be responsible for the payment of that lien. And that gets back to what I think is really the important point here, Your Honor, is that the record defies the contention that is the baseline of Mr. Cook's appeal, which is that there was no threat to the payment of his $200 million in attorney's fees until 2016. He was discharged in 2011. He was told at that point in time that it was for charge. He did absolutely nothing at that point in time, although the case law is crystal clear. As you pointed out, I think, Judge Lynch, that at that point in time he had the right under New York law to come into court and to say, I have a lien on these funds. And what the case law also says, and what all of his arguments ignore, is that before he can attain an attorney's lien, he has an obligation to show that he was not discharged for cause. And he has never made any argument saying that he was not discharged for cause. In fact, what he tells us is that this court and the district court has no right even to consider that issue. That they need to set all of this money aside without him making any demonstration that he was not discharged for cause. And one thing he points out in his brief is that this court enforced that rule that I'm talking about in the Weishart opinion. It was a summary order, but it should be no surprise that there's plenty of case law for that, including the Court of Appeals decision in Technia and other cases. So Mr. Cook waited for five years after his discharge. Then in 2013, the plaintiffs attained their judgment. He didn't know at that point in time that there was going to be a qualified settlement fund created, nothing. Even after they attained judgment, and the money could have been paid over the next day to the plaintiffs, he did absolutely nothing. He sat on his hands. He waited for all of the appellate proceedings in this case to be resolved three years later. And as I said, in the interim between the time he was discharged and the time at which the money was ready to be distributed, there was a very important settlement entered into by not only the group of clients that he represented, but groups of clients who were represented by many, many lawyers, many, many people who were entitled to hundreds of millions of dollars. Strategic decisions were made with no idea that Mr. Cook would one day come into this court and say, I am entitled to money that was paid to people that I never represented. And so, it's very important also- His argument that once the appeals were underway after the summary judgment, the court didn't have jurisdiction, and that excuses his- I don't think that that's true, Your Honor. I think that that's a collateral issue, whether he had an attorney's lien. That's an issue, that wasn't argued in the briefs, but I'm fairly certain that that's an issue that the district courts could have taken up as a collateral issue that was not something that was under consideration by this court at that time. Could you address the Cohen case that Mr. Fulkenflik relied on? That only came up in his reply brief, and so you haven't had an opportunity in the briefing to address that. So, I think the reason why the Cohen case is not very important here, Your Honor, is that it was not a case that considered whether there was an abuse of discretion by a court in denying intervention. So, Cohen says, yes, it does say that you can enforce your lien, but what it does not say is that you can sit on your hands for five years while all these developments go on in the litigation. Importantly, there was no issue of cause whatsoever in the Cohen case. There's no issue of abuse of discretion. And all that the court held in that case was that if you represented the client on the very same cause of action that they ultimately recovered on, that you could have a lien. And importantly in the Cohen case, the outgoing lawyer, again, no issue of cause, gave notice to the fact that he was expected to be paid on a percentage basis at the end of the case. No such notice ever being provided by Mr. Cook in these circumstances. And I think, Your Honors, we did address in our brief with respect to the abuse of discretion standard. The cases that he tries to build that argument on are not cases that involved an abuse of discretion, or even cases that allow people to intervene in the Redwall case, which is the number one case that he cites. All that the court found in that circumstance was that a person who had not been discharged for cause, who was holding the client funds in his trust account, didn't have to move to attain an attorney's lien. Because there was no risk at all to the payment that he was going to receive. That couldn't be further from the truth here. He was discharged, he was told he was being discharged for cause. There was judgment entered, five years passed. It has absolutely nothing to do with the principal case that he bases his opinion on. The Larrow Estates case, Your Honor, your case, is another case he brings up only in reply. No abuse of discretion found in that case. And all the court found was that you can have a timely motion to intervene when a case is at its very beginning. The court explicitly said, this case is not at its 11th hour, and there was not going to be any prejudice to anyone. Well, this situation is totally different from the Larrow Estates case. Here we have someone coming in, not at the 11th hour, this is post-judgment. He's coming in and saying that he has an opportunity to intervene. And there's going to be prejudice to the lawyers, to the parties, potentially, and also certainly to these people who were never represented by Mr. Cook, who he's now claiming that they owe him money. Two more points, Your Honor, which I think are critical here to keep in mind. The answer that what happened in DC doesn't affect what's happening here, I don't even understand that. He was told in DC that he doesn't have a lien. And if he doesn't have a lien in DC, then he doesn't have a lien. Because the second point I want to make is that he told the court in DC that he never even argued here in New York that he had a New York lien, never argued. So the first time that he ever argued that he had a New York lien under section 475 is when the briefing was put into this court six years after his termination. So if ever there were a case where a waiver would occur, it has to be this one. He has an obligation under the intervention rules to move in a timely fashion. He admitted that he never made his argument. And the Court of Appeals, in a very important case, Kaplan says that if you have an attorney's lien and you fail to move within a reasonable period of time to enforce that lien, you forfeit that lien. Five, six years in the middle of a $1.9 billion litigation with many people's rights being settled along the way. That is just way too long for a lawyer to wait to try to enforce his lien. So both because of the fact that he's lost in DC, the only lien he ever asserted, and the fact that he has admitted in the DC papers that he never even asserted a New York lien here in New York, he has no lien to enforce. Now, there are a number of substantive reasons why he doesn't have a lien, Your Honor, and I'd be glad to address them. Those are addressed in the brief, and I see that my time is up. I don't know whether- Thank you very much. Okay. Thank you, Your Honor. You're reserved for three minutes. Thank you, Your Honor, and I appreciate the courtesy because I was way over time before. To address, so I'll be as quick as I can. First of all, Kaplan does not apply to this circumstance because Kaplan was a third party right. Money was paid out of, not from the plaintiff, to a third party. And the court said that the third party was prejudiced because they weren't aware that you were going to assert a lien. The Kohn case very explicitly stands for the proposition that you don't have to assert the lien at any time. It's automatic. It's a matter of statute. It's not a matter like, for example, in the DC circuit, you have to file a notice of lien. That's not true in New York. All you have to do is, the person who has the money, if he's aware of the lien before he pays out the money, he pays it out at his risk. Now normally, an attorney, certainly my experience, attorneys who believe they have liens don't intervene in actions. They file a notice on the defendant and say, don't pay the plaintiff without paying me. And that's the equivalent of what we did here. We looked to the funds, which were absolutely in custodial legis, absolutely protected until the moment the district court entered its order on June 6th. So, now, Mr., there are two issues with respect to the 475 argument. Are you saying that at that time that the money was in the custody of the court, you gave a notice to somebody not to pay anyone? No, what I'm saying is this, Your Honor. We did serve the trustee of the QSF trust with notice of lien. The QSF's trust was a qualified settlement fund trust, which was established pursuant to court order and under the jurisdiction of the court. And the court directed that that fund be held and administered under the court's direction and no funds be released until further order of the court. When was that? When was which? When was that order that you just spoke of, the QS fund? The QSF trust fund order was in July of 2013. Summary judgment decision was entered in March. Your so-called notice go out? No, we didn't notify the QSF fund trustee until it appeared that he was about to be authorized to release the funds. So we know- That's the time that you filed the motion? That's in, I think it was at the end of May, but yes. The notice actually, the notice of lien is dated May 19th. That's the time you moved to intervene. Approximately, yes, within days. But the funds were still there, so in the same way that if we notified a defendant, don't pay the plaintiff, as long as the payment hadn't been made, it's timely. With respect to the settlement with other parties, that settlement is secret, we've never seen it. They refuse to disclose it, but those parties got 13% of the settlement proceeds payable to plaintiffs. We believe that that settlement also provides for the other attorneys to be paid by those plaintiffs because the work that was done by them, and we assert by Cook, produced the funds that were being divided up, but we don't know the terms. So it may be that there is no prejudice to anybody. The money that went to these other plaintiffs may be subject to the same attorney's lien. The attorneys maybe didn't compromise their position at all. We don't know. A lot of maybes.  Thank you, Your Honor.